Index No.  24-CV-01874-ER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAVEN'S LANDING, LLC d/b/a DR. NATURE RX, HEMPED NYC, LLC, HIDDEN HEMP CORP., HEMPED NYC ON ORCHARD LLC, GASKO & MEYER INC., SARENE CRAFT BEER DISTRIBUTORS, LLC, WINDY HILL 312 LLC d/b/a WINDY HILL CBD AND WELLNESS, NORTH FORK DISTRIBUTION, INC. d/b/a CYCLING FROG, THE GREEN ROOM, AND REBEL RABBIT

                                                        Plaintiffs,

-against-

NEW YORK STATE CANNABIS CONTROL BOARD, NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT, TREMAINE WRIGHT, in her official capacity as Chairwoman of the New York State Cannabis Control Board,  and FELICIA A.B. REID, in her official capacity as Executive Director of the New York State Office of Cannabis Management,  the NEW YORK CITY SHERIFF'S OFFICE,  and ANTHONY MIRANDA, in his official capacity as New York City Sheriff,

                                                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the*
*City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, NY  10007*

*Of Counsel:  Adam M. Moss and*
*                  Leah A. Reiss*
*Tel:  (212) 356-4017*
*amoss@law.nyc.gov*
*lreiss@law.nyc.gov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

POINT I

PLAINTIFFS LACK STANDING TO COMMENCE THIS
ACTION AGAINST THE SHERIFF'S OFFICE ...................................................... 3

        A.      Plaintiffs Lack Standing to Assert Claims
Against the Sheriff's Office that Relate to
Enforcement Actions Allegedly Taken
Against Plaintiffs ............................................................................ 3

        B.      To the Extent Plaintiffs Allege They May
Suffer Harms From Hypothetical Future
Enforcement Actions Taken by the Sheriff's
Office, Such Harms Are Purely Speculative
and Therefore Insufficient to Establish
Standing Against the Sheriff's Office ............................................ 5

POINT II

TO THE EXTENT THE AMENDED COMPLAINT CAN
BE CONSTRUED AS CHALLENGING THE
AUTHORITY OF THE SHERIFF'S OFFICE TO
CONDUCT ENFORCEMENT ACTIONS IN
ESTABLISHMENTS LICENSED TO SELL HEMP,
SUCH CLAIM SHOULD BE DISMISSED AS A
MATTER OF LAW FOR FAILURE TO STATE A
CLAIM .................................................................................................................... 9

        A.      Statutory Framework of the Sheriff's
Office's Enforcement Authority ................................................... 10

                1. Brief Overview of the State Cannabis
Law ................................................................................................ 10

                2. Explosion of Unlicensed Cannabis
Establishments in the City ........................................................... 11

3. The State's Amendment of the City Administrative Code to Permit Enforcement in the City by the Sheriff's Office Against Unlicensed Adult-Use Cannabis ....................................................11

4. OATH Adjudication and Rules Pertaining to Return of Seized Product .........................................................12

B.    The Sheriff's Office Is Authorized to Inspect Any Establishment Suspected of Selling Adult-Use Cannabis Without an Adult-Use Cannabis License, Regardless of Whether Such Establishment Possesses a Hemp License ..........................................................................14

CONCLUSION...........................................................................................................20

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                          <u>**Pages**</u>

<u>Allen Oil Co. v. Comm'r</u>,
  614 F.2d 336 (2d Cir. 1980) ................................................................17

<u>Baur v. Veneman</u>,
  352 F.3d 625 (2d Cir. 2003) .........................................................4, 6–7

<u>Brecken Gold Athletics NYC LLC v. Office of the City Sheriff</u>,
  Index No. 157686/2024 (Sup. Ct. N.Y Cnty. Oct. 16, 2024) (J. Frank) ...........................18–19

<u>Clapper v. Amnesty Int'l USA</u>,
  568 U.S. 398 (2013) ................................................................7

<u>Lacewell v. Office of the Comptr. of the Currency</u>,
  999 F.3d 130 (2d Cir. 2021) ................................................................3

<u>Linda R. S. v. Richard D.</u>,
  410 U.S. 614, 617 (1973) ................................................................6–7

<u>Lujan v. Defenders of Wildlife</u>,
  504 U.S. 555 (1992) ................................................................7

<u>Manbeck v. Micka</u>,
  640 F. Supp. 2d 351 (S.D.N.Y. 2009) ................................................................6

<u>Moon Rocket Inc. v. City of New York</u>,
  24-cv-4519 (JPO), 2024 U.S. Dist. LEXIS 127969 (S.D.N.Y. July 18, 2024) ...............19

<u>People v Mobil Oil Corp.</u>,
  48 N.Y.2d 192 (1979) ................................................................17

<u>Robinson v. Shell Oil Co.</u>,
  519 U.S. 337 (1997) ................................................................17

<u>Saks v. Franklin Covey Co.</u>,
  316 F.3d 337 (2d Cir. 2003) ................................................................17

<u>Spokeo, Inc. v. Robins</u>,
  578 U.S. 330 (2016) ................................................................3

<u>Vitagliano v. Cnty. of Westchester</u>,
  71 F.4th 130 (2d Cir 2023) ................................................................7

Warth v. Seldin,
    422 U.S. 490 (1975)...........................................................................................................3, 6–7

Whitmore v. Arkansas,
    495 U.S. 149, 158 (1990)........................................................................................................7

**<u>Statutes</u>**

Cannabis Law § 2.....................................................................................................................11

Cannabis Law § 125.................................................................................................................15

Cannabis Law § 132.............................................................................................................15–16

Cannabis Law § 138-b(4)......................................................................................................8, 12

Cannabis Law Article 3 ...........................................................................................................10

Cannabis Law Article 4 ..................................................................................................10, 12, 16

Cannabis Law Article 5 ..................................................................................................10, 12, 16

City Admin. Code § 7-551....................................................................................................12–15

City Admin. Code § 7-552....................................................................................................12–16

City Charter § 1049.................................................................................................................12

Fed. R. of Civ. Proc. 12(b)(1)&(6) ............................................................................................1

19 RCNY 42-04 ..............................................................................................................11, 13–14

48 RCNY §§ 6-11–6-18..........................................................................................................12

## PRELIMINARY STATEMENT

Defendants, the New York City Sheriff's Office and Anthony Miranda, in his official capacity as New York City Sheriff (collectively, the "City" or "Sheriff's Office") submit this Memorandum of Law in support of their motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs commenced this action against the New York State defendants ("State Defendants") in March 2024, primarily alleging constitutional violations in connection with enforcement actions taken by State Defendants against Plaintiffs' businesses—various entities that sell, distribute, or manufacture hemp-infused products. Seven months later, Plaintiffs filed an Amended Complaint, which, *inter alia*, joins the Sheriff's Office as a defendant. Despite joining the Sheriff's Office, Plaintiffs do not allege that the Sheriff's Office took part in the State's enforcement efforts. In fact, Plaintiffs do not allege that the Sheriff's Office has ever sought to take any action, of any kind, against any of Plaintiffs' hemp-licensed businesses or that the Sheriff's Office plans to take any such action against Plaintiffs. Given that Plaintiffs do not allege that the Sheriff's Office has caused them any injury-in-fact, Plaintiffs cannot establish standing to assert claims against the City, and any such claims should be dismissed for this reason alone.

In addition to Plaintiffs' failure to allege an injury caused by the City, Plaintiffs also fail to clearly assert any specific claims against the City. None of the nine causes of action in the Amended Complaint can even be construed as stating a claim against the Sheriff's Office. Nevertheless, despite the lack of clarity in the pleadings, the City construes the Amended Complaint as seeking an advisory opinion from the Court that the Sheriff's Office may not take hypothetical enforcement actions against Plaintiffs' establishments in the future. Specifically, it appears Plaintiffs seek an order from this Court that would prohibit the Sheriff's Office from

inspecting their hemp-licensed establishments if the Sheriff's Office suspected those establishments of selling cannabis products without an "adult-use cannabis" license. But mere speculation about future harm is not sufficient to confer standing. The City has not given any indication that it intends to take enforcement actions involving Plaintiffs' establishments, nor do the pleadings contain any allegations that the City plans to take such action. What's more, most of Plaintiffs' businesses are either outside of the City or have closed, and thus could not even conceivably be the subject of a Sheriff's Office enforcement action. Plaintiffs lack standing to assert harms based on speculative future enforcement actions.

In any event, even if Plaintiffs had standing to challenge a hypothetical future enforcement measure—which they do not—the City authority challenged here is plainly lawful. Plaintiffs disingenuously assert that the Sheriff's Office lacks authority to conduct inspections of establishments suspected of selling adult-use cannabis without a license, if those shops have a license to sell hemp. And yet, Plaintiffs acknowledge that hemp and adult-use cannabis are separate products which are subject to separate licensing schemes, and that Plaintiffs' establishments are licensed to sell hemp, but not adult-use cannabis. The fact that an establishment possesses a hemp license does not immunize that establishment from inspection and enforcement in the event that such store is suspected of illegally selling unlicensed and potentially dangerous adult-use cannabis products that it does not possess a license to sell. Plaintiffs' argument is inconsistent with the applicable statute, poses a threat to public health, and should fail as a matter of law.

For any or all of the foregoing reasons, the Amended Complaint should be dismissed as against the Sheriff's Office, with prejudice.

## ARGUMENT

## POINT I

## PLAINTIFFS LACK STANDING TO COMMENCE THIS ACTION AGAINST THE SHERIFF'S OFFICE

The Amended Complaint must be dismissed against the Sheriff's Office because Plaintiffs cannot establish standing.  Plaintiffs have not alleged that the Sheriff's Office has caused Plaintiffs any injury-in-fact.  Moreover, mere speculation about hypothetical future harm is not sufficient to establish standing.

As the Second Circuit has recently summarized, "[t]he requirements of Article III standing are well established: [A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," and "the party invoking federal jurisdiction, bears the burden of establishing these elements." Lacewell v. Office of the Comptr. of the Currency, 999 F.3d 130, 141 (2d Cir. 2021) (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)) (internal quotations omitted).  Moreover, "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly…allege facts demonstrating' each element." Spokeo, 578 U.S. at 338 (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).  Plaintiffs here cannot establish any, let alone all three, of the requirements for Article III standing.

A.    **Plaintiffs Lack Standing to Assert Claims Against the Sheriff's Office that Relate to Enforcement Actions Allegedly Taken Against Plaintiffs**

The Amended Complaint broadly raises allegations of "unlawful enforcement actions undertaken against lawfully licensed hemp retailers." Am. Compl. ¶ 2.  Plaintiffs detail several inspections taken by State Defendants against individual Plaintiffs, all of which allegedly took place prior to 2024.  See Am. Compl. ¶¶ 57–116.  However, Plaintiffs have failed to raise any allegations whatsoever that the Sheriff's Office was responsible for any such enforcement

-3-

actions against Plaintiffs. And in fact, the alleged State inspections and enforcement actions were taken before the Sheriff's Office had been authorized by the New York State Legislature under Chapter 5-A of the New York City Administrative Code ("City Administrative Code" or "Admin. Code") to conduct enforcement actions against unlicensed establishments reasonably believed to be selling cannabis in the City.[1] The Sheriff's Office was not delegated with such enforcement authority until April 20, 2024, when the State Legislature amended the City's Admin. Code, as detailed below in Point II(A).

"To establish Article III standing, a plaintiff must [] allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003). Far from being "fairly traceable" to the Sheriff's Office, the injuries alleged in the Amended Complaint are not traceable to the Sheriff's Office at all, only allegedly, to the State. Nor have Plaintiffs alleged that they are traceable to the Sheriff's Office.[2]

Further demonstrating that Plaintiffs lack standing, all of the claims set forth in the Amended Complaint are focused on the enforcement actions allegedly taken by State Defendants against Plaintiffs as well as regulatory actions taken by State Defendants. Specifically, the Amended Complaint includes nine separate causes of action. None can be construed as stating a claim against the City, much less a claim based on an injury to Plaintiffs caused by the City. The first seven causes of action allege violations of Plaintiffs' constitutional

---

[1] See Am. Compl. ¶¶ 60, 81, 110.

[2] The City explained in its Pre-Motion Letter (ECF No. 76, pp. 2-3) that Plaintiffs have not alleged any injury caused by the City. In opposition to the City's Pre-Motion Letter, Plaintiffs again make no allegations of any injury caused by the Sheriff's Office related to prior enforcement actions. Instead, Plaintiffs focus on the "risk" of future constitutional harms. See Plaintiffs' Opp. to Pre-Motion Letters (ECF No. 79, pp. 4-5).

rights in connection with the 2023 inspections allegedly conducted by State Defendants. See Am. Compl. ¶¶ 175-227.  The eighth and ninth causes of action challenge the validity of regulations amending the New York Codes, Rules and Regulations ("NYCRR"), which the State Cannabis Control Board adopted in November 2023, and which pertain to hemp products. See Am. Compl. ¶¶ 228-238.  These are, of course, State rules and regulations, enacted and enforced by the State, not by the City.

Plaintiffs fail to allege any injuries that were caused by the City, and all of their claims are predicated on the actions allegedly taken by State Defendants.  For these reasons alone, the Amended Complaint should be dismissed as against the City.

**B.    To the Extent Plaintiffs Allege They May Suffer Harms From Hypothetical Future Enforcement Actions Taken by the Sheriff's Office, Such Harms Are Purely Speculative and Therefore Insufficient to Establish Standing Against the Sheriff's Office**

As discussed above, the Amended Complaint alleges no injury-in-fact traceable to the City and seeks to assert claims only against State Defendants.  Nevertheless, despite the vague pleadings, the City construes the Amended Complaint as seeking an advisory opinion from this Court to enjoin potential future actions that the City might take against Plaintiffs' establishments.

While none of the nine causes of action expressly states a claim against the Sheriff's Office, the section of the Amended Complaint dedicated to the Sheriff's Office (Am. Compl. ¶¶ 164-174) states that "Plaintiffs are licensed" with hemp licenses, and thus, the City Administrative Code "does not provide the Sheriff with the authority to raid Plaintiffs' stores, though they do so with reckless impunity." Am. Compl. ¶ 168.  In other words, Plaintiffs assert that the Sheriff's Office may not inspect establishments suspected of selling cannabis products without an "adult-use cannabis" license if such establishments maintain unrelated hemp licenses.

While Plaintiffs do not make explicit that they seek an order from this Court that the Sheriff's Office may not inspect and take enforcement against hemp-licensed establishments (like Plaintiffs'), this is the only claim against the Sheriff's Office that the City can ascertain from its review of the Amended Complaint.

Given that Plaintiffs do not allege or detail any "raids" performed by the Sheriff's Office against any of Plaintiffs' establishments, it is clear that Plaintiffs are instead alleging that the City inspects other (non-Plaintiff) hemp-licensed establishments, which in the view of Plaintiffs, is impermissible, and should be enjoined. Of course, Plaintiffs cannot establish standing by asserting that a non-party has been harmed. Instead, Plaintiffs suggest that the City's enforcement against non-party establishments demonstrates a "risk" that harms could also be "inflicted on Plaintiffs sufficient to confer Article III standing." See Plaintiffs' Opp. to Pre-Motion Letters (ECF No. 79, p. 4).

But Plaintiffs' mere speculation of future harms is not sufficient to establish standing. A plaintiff bears the burden of establishing that there is a "case or controversy" between itself and the named defendants. Warth v. Seldin, 422 U.S. 490, 498 (1975). "To establish Article III standing, a plaintiff must [] allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003). A court's jurisdiction cannot be invoked unless the named plaintiff has personally suffered "some threatened or actual injury resulting from the putatively illegal action[.]" Warth, 422 U.S. at 499 (quoting Linda R. S. v. Richard D., 410 U.S. 614, 617 (1973)); see also, e.g., Manbeck v. Micka, 640 F. Supp. 2d 351, 368 n.16 (S.D.N.Y. 2009). Moreover, "[t]o qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized'

-6-

as well as 'actual or imminent, not 'conjectural' or hypothetical.'" Baur, 352 F.3d at 632
(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

      Any contention that Plaintiffs have sustained a "concrete and particularized"
injury must fail.  The Amended Complaint contains no allegations of any injury caused by the
Sheriff's Office.[3]    Nor is the asserted injury "actual or imminent, not conjectural or
hypothetical."  The alleged injury is *entirely* hypothetical.  While an allegation of future injury
may be sufficient to establish standing, the Supreme Court has "repeatedly reiterated that
threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of
*possible* future injury are not insufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409
(2013) (internal citations omitted); see also e.g. Vitagliano v. Cnty. of Westchester, 71 F.4th 130,
136 (2d. Cir 2023) (quoting Clapper, 568 U.S. at 409); Whitmore v. Arkansas, 495 U.S. 149, 158
(1990) (General "[a]llegations of possible future injury do not satisfy the requirements of
[Article] III").  Plaintiffs have not pled that they have any indication whatsoever that the
Sheriff's Office plans to take enforcement actions against Plaintiffs.  The Sheriff's Office
inspects and/or takes enforcement actions, under the City Administrative Code, when it
reasonably suspects that adult-use cannabis is being sold without the appropriate adult-use
cannabis license.  The Amended Complaint does not state that Plaintiffs have *any* reason to

---

[3] To the extent the Amended Complaint could be construed as claiming that a non-party
possessing a hemp license suffered a concrete or particularized injury because their
establishment was inspected and/or enforced against by the Sheriff's Office, Plaintiffs cannot
establish standing on such basis.  The only discussion in the Amended Complaint of enforcement
actions that the Sheriff's Office has allegedly taken involves a sealing order issued to a business
that is not a party in the instant action. See Am. Compl. ¶¶ 127–128.  Plaintiffs may not raise
challenges to enforcement actions allegedly taken against a non-party, nor may they attempt to
substitute an injury allegedly suffered by a non-party to satisfy their requirement to establish
standing. See, e.g., Warth, 422 U.S. at 499 (citing Linda R.S., 410 U.S. at 617) ("The Art. III
judicial power exists only to redress or otherwise to protect against injury to the complaining
party, even though the court's judgment may benefit others collaterally.").

believe their establishments will be the subject of enforcement by the City,[4] let alone that they are threatened by a "certainly impending" injury.[5]

Plaintiffs lack standing to state a claim seeking a declaration of this Court prohibiting future enforcement action by the Sheriff's Office—Plaintiffs have alleged no injury, nor pled that they are threatened by a "certainly impending" injury.  Accordingly, the Amended Complaint should be dismissed as against the Sheriff's Office based on Plaintiffs' inability to establish standing.

---

[4] What's more, of the ten named Plaintiffs, only five actually claim to operate shops in the City, and of those five, at least two operated shops that have since closed, and thus, could not even hypothetically be subject to enforcement actions by the Sheriff's Office. See Am. Compl. ¶¶ 77, 95, 104.

[5] Further highlighting Plaintiffs' complete and utter lack of standing, Plaintiffs claim that the City may not enforce against their establishments in the future because Plaintiffs are allegedly not engaged in activity that would be deemed "an imminent threat to public health, safety, and welfare" under Section 138-b(4) of the Cannabis Law.  This is an available defense that may be asserted by a store that has been closed by the Sheriff's Office after a determination that the establishment is selling adult-use cannabis without a license.  But here, the Sheriff's Office has not taken any action against Plaintiffs nor has the Sheriff's Office ever alleged that Plaintiffs are selling adult-use cannabis without a license.  Plaintiffs' protestations that they do not pose an imminent threat to the public is completely immaterial and irrelevant to this litigation—the City Sheriff has never suggested that Plaintiffs pose an imminent threat to public health, safety, and welfare.  Plaintiffs volunteer a defense for charges the City has never levied against them.

## POINT II

**TO THE EXTENT THE AMENDED COMPLAINT CAN BE CONSTRUED AS CHALLENGING THE AUTHORITY OF THE SHERIFF'S OFFICE TO CONDUCT ENFORCEMENT ACTIONS IN ESTABLISHMENTS LICENSED TO SELL HEMP, SUCH CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW FOR FAILURE TO STATE A CLAIM_____**

As detailed in Point I, Plaintiffs lack standing because they have alleged no injury or *certainly impending* injury caused by the Sheriff's Office. If anything, Plaintiffs allege a hypothetical possible future injury, which is insufficient to confer standing.

The only claim that can possibly be construed against the City is that Plaintiffs seek an order from this Court prohibiting the Sheriff's Office from inspecting their establishments or taking enforcement actions against their establishments in the future. Even if Plaintiffs had standing to assert such a claim, which they do not, it should fail as a matter of law.

Plaintiffs acknowledge that while they are licensed to sell hemp, they are not *also* licensed to sell adult-use cannabis. See Am. Compl. ¶¶ 3-5. And yet, Plaintiffs argue that, because they possess hemp licenses, the City cannot inspect and take enforcement actions against Plaintiffs' establishments, if Plaintiffs were to illegally sell adult-use cannabis products. See Am. Compl. ¶¶ 167-170. As explained below, a business' possession of a hemp license cannot immunize that establishment from inspection and enforcement in the event the store is suspected of illegally selling adult-use cannabis products without a license. As a matter of background, Point II.A below briefly summarizes the City's statutory authority under Chapter 5-A of the City Administrative Code, which was amended by the State Legislature in April 2024 to permit the City to take enforcement action against establishments selling adult-use cannabis without a license issued by the State. Point II.B discusses why Plaintiffs' argument is incorrect under the

applicable statute and would undermine the City's authority to ensure that only licensed vendors be permitted to sell adult-use cannabis that is appropriately regulated, tested, and labeled, in the City, in order to protect public safety.

## A. Statutory Framework of the Sheriff's Office's Enforcement Authority

The crux of the Amended Complaint is Plaintiffs' challenge to State Defendants' promulgation of rules related to hemp licenses, and the State's procedures and alleged actions with respect to enforcement of the Marihuana Regulation and Taxation Act (the "MRTA" or "Cannabis Law") against Plaintiffs. Notably, the City has no role in promulgating the State's rules nor in enforcing the State-specific enforcement procedures for hemp licensees.

However, separate and apart from the State's licensing and enforcement scheme, the New York State Legislature amended the Cannabis Law, effective on April 20, 2024, to authorize the Sheriff's Office to take enforcement actions against businesses in the City that are engaged in selling products marketed or labeled as cannabis, without the appropriate license to sell cannabis under the Cannabis Law.

### 1. Brief Overview of the State Cannabis Law

On March 31, 2021, the Cannabis Law was signed into law in New York State, legalizing adult-use cannabis and creating the Office of Cannabis Management ("OCM"), which regulates adult-use cannabis, medical cannabis, and hemp cannabis. OCM issues licenses and develops regulations regarding how and when businesses can participate in the new cannabis industry. There are three main categories of licenses issued by OCM: (1) medical cannabis licenses (set forth in Cannabis Law Article 3); (2) adult-use cannabis licenses (set forth in Cannabis Law Article 4); and (3) cannabinoid hemp or hemp extract licenses (set forth in Cannabis Law Article 5). The primary objective of the Cannabis Law is to facilitate a responsible, legal, and licensed cannabis market in the State.

### 2.  Explosion of Unlicensed Cannabis Establishments in the City

As of May 2024, City data indicated that 3,600 unlicensed cannabis retailers were operating within the City in flagrant violation of the law.  See "Statement and Basis of Purpose," Section 42-04 of Title 19 of the Rules of the City of New York ("RCNY").  Section 2 of the Cannabis Law, titled "Legislative Findings and Intent," reflects a finding by the New York State Legislature that unlicensed sale of unregulated cannabis products is a threat to the public health.  See Cannabis Law § 2.  The intent of the statute is, *inter alia*, to "prevent access to cannabis by those under the age of twenty-one years, reduce the illegal drug market…reduce participation of otherwise law-abiding citizens in the illicit market…[and] protect the public health, safety and welfare of the people of the state."  Id.

Many unlicensed retail establishments in the City are located within proximity to schools, public youth facilities, and houses of worship.  Cannabis-infused edibles, which are intended for consumption by adults, are being purchased by minors because of deceptive marketing, labeling, and packaging.  Moreover, such cannabis products are typically produced by unregulated, unlicensed manufacturers that could contain harmful additives and/or contaminants, as well as unpredictable amounts of a chemical compound known as "THC."[6]

### 3.  The State's Amendment of the City Administrative Code to Permit Enforcement in the City by the Sheriff's Office Against Unlicensed Adult-Use Cannabis

To curtail the continued unlawful operation and growth of the unlicensed cannabis industry, the New York State Legislature, pursuant to Section 11 of Part G of Chapter 55 of the Laws of 2024, added Chapter 5-A to Title 7 of the City Administrative Code.  This new

---

[6] THC is an abbreviation for chemical compounds that are found in cannabis ("tetrahydrocannabinols"), which are known for causing psychoactive effects (i.e., feelings of being high).

law authorizes the Sheriff or his designee to take enforcement action against unlicensed businesses by conducting inspections of, issuing summonses to, and sealing such businesses selling cannabis marketed products without the appropriate adult-use cannabis license issued under Cannabis Law Article 4. <u>See</u> Admin. Code §§ 7-551(b), 7-552(b).[7]

In summary, Admin. Code § 7-551 authorizes the Sheriff's Office to issue civil summonses to individuals engaged in the sale of adult-use cannabis or any product marketed or labeled as such to consumers within the City without obtaining a license. And Admin. Code § 7-552 further authorizes the Sheriff's Office to issue and execute an order to seal a building or premises where such activity is occurring, if the Sheriff's Office finds that allowing the establishment to continue operating would pose "an imminent threat to the public health, safety, and welfare" as defined under the Cannabis Law."[8]

### 4. OATH Adjudication and Rules Pertaining to Return of Seized Product

Pursuant to Admin. Code §§ 7-551(c) and 7-552(b)(2), summonses and sealing orders may be adjudicated within five days, in a proceeding before the City Office of Administrative Trials and Hearings ("OATH"), an independent administrative tribunal empowered to conduct adjudicatory proceedings, impose civil penalties, and issue decisions. <u>See</u> Chapter 45-A, Section 1049 of the New York City Charter ("City Charter"); Admin. Code § 7-552(b)(2); 48 RCNY §§ 6-11–6-18. The OATH Hearing Officer renders a determination on the

---

[7] As noted above, the Sheriff's Office is not authorized to take enforcement under Cannabis Law Article 5, which authorizes licenses for cannabinoid hemp or hemp extract licenses. The purpose of the authorization in the Admin. Code is to enable the Sheriff's Office to crack down on sales of unsafe adult-use cannabis products marketed and sold to children and others. It is the State, not the City, that is responsible for regulating hemp products and licenses.

[8] <u>See</u> Cannabis Law § 138-b(4) (factors that may result in a finding of an imminent threat include, but are not limited to, documented sales to minors, proximity to schools, or a finding of unlicensed processing of cannabis products on site).

civil summons, which is deemed a final decision of such office. The Hearing Officer also makes a recommendation to the Sheriff's Office with respect to whether such order to seal was properly issued. <u>See</u> Admin. Code § 7-552(b)(2). Under the authority delegated by the Admin. Code, the Sheriff's Office then makes a final determination with respect to continuation of such order to seal upon review of such recommendation.

Finally, the City Department of Finance ("DOF") implemented rules for challenging the seizure of products and orders to cease prohibited conduct. An "individual may petition in writing to the address, email address, or by using the applicable electronic form referenced on such summary or mailing, as applicable, to challenge the seizure of cannabis or other related items and may provide reasons that such cannabis or other related items were neither offered for sale in violation of [Admin. Code § 7-551(a)], nor used as instrumentalities in furtherance of a violation of [§ 7-551(a)]." <u>See</u> 19 RCNY § 42-04(g)(1).

In summary, the above statutory framework outlines the City's inspection and enforcement authority related to suspected unlicensed sales of adult-use cannabis products. Plaintiffs here do not generally challenge the authority of the Sheriff's Office to conduct the above-described inspection and enforcement activities, nor do Plaintiffs contend that the Sheriff's Office has improperly carried out its authority against any of the Plaintiffs. Nor could they—Plaintiffs have not alleged that the Sheriff's Office has taken any action against Plaintiffs. Primarily at issue in this litigation is the State's regulation and enforcement of hemp licensing and sales. The Sheriff's Office does not, and cannot take enforcement actions based on non-compliance with hemp rules or regulations.

What Plaintiffs do appear to challenge here with respect to the City is quite limited. Specifically, Plaintiffs contend that they should be exempt from the City's authority to enforce against unlawful sales of adult-use cannabis under the above-described Admin. Code

sections 7-551 and 7-552, because they are separately licensed to sell hemp.  But as discussed in Point II.B, it is irrelevant that Plaintiffs possess a hemp license, because the City's enforcement targets illegal sales of adult-use cannabis—a product which Plaintiffs admit they are not licensed to sell—by businesses without adult-use cannabis licenses.

**B. The Sheriff's Office Is Authorized to Inspect Any Establishment Suspected of Selling Adult-Use Cannabis Without an Adult-Use Cannabis License, Regardless of Whether Such Establishment Possesses a Hemp License**

Admin. Code § 7-552(a) authorizes the Sheriff's Office to conduct regulatory inspections of any place of business where cannabis, cannabis products, or any products marketed or labeled as such, are sold, or offered to be sold, where no registration, license, or permit has been issued pursuant to the Cannabis Law.  Plaintiffs rely on this provision of law to claim they are categorically exempt from all regulatory inspections because they possess a hemp license under the Cannabis Law.  Plaintiffs' illogical, disingenuous, and dangerous interpretation of the statute should fail as a matter of law.

According to Plaintiffs, the provisions of Admin. Code §§ 7-551 and 7-552 that permit the Sheriff's Office to conduct regulatory inspections of businesses without licenses to sell adult-use cannabis do not apply to Plaintiffs because they "are licensed" (to sell hemp). Am. Compl. ¶ 168.[9]  Plaintiffs add that they "have licenses, thus § 7-511[10] of the Administrative Code…does not apply to Plaintiffs." Am. Compl. ¶ 170.  This is wrong not only as a plain

---

[9] Plaintiffs also cite Section 42-04 of Title 19 of the RCNY in furtherance of their argument. This section of the RCNY sets forth procedures for carrying out civil administrative enforcement pursuant to Admin. Code §§ 7-551 and 7-552.

[10] Plaintiffs' citation to section 7-511 (a non-existent section of the Admin. Code) is likely inadvertent, and Plaintiffs presumably intend to refer to section 7-551.

language reading of the statute, but also because this interpretation would undermine the entire purpose of the statute, thus threatening the legislative licensing scheme as well as public safety.

According to the plain language of the statute, Plaintiffs' argument simply has no basis.  Admin. Code § 7-552(a) plainly authorizes the Sheriff's Office to conduct administrative inspections where cannabis products and cannabis-marketed products are sold without a license "issued pursuant to the cannabis law."  Subsection (2) of that same provision expounds upon the purpose and authority regarding those administrative inspections, making clear that a business needs the correct license issued under the Cannabis Law and not just *any* license issued under the cannabis law: "[Any such regulatory inspection shall] be conducted for purposes of civil administrative enforcement with respect to premises lacking ***applicable*** registrations, licenses or permits issued pursuant to the cannabis law, ***and in furtherance of the purposes of such law***[.]"  Admin. Code § 7-552(a)(2). (emphasis added).  To this end, Admin. Code § 7-551(f) defines "unlicensed activity" as "unlawfully selling cannabis, cannabis product, or any product marketed or labeled as such without obtaining the ***appropriate*** registration, license, or permit therefor[.]"  Admin. Code § 7-551(f).

Moreover, Plaintiffs' argument that they are immune from inspections is further undercut by the plain text of Admin. Code § 7-552(b), which authorizes the Sheriff's Office to seal a building or premises where a person is engaged in conduct prohibited by Admin. Code § 7-551.  Admin. Code § 7-551 establishes civil penalties for any person engaging in certain conduct prohibited under the Cannabis Law in two ways.  First, the Admin. Code forbids "any conduct prohibited by [Cannabis Law § 125(1) or (1-a).]" Admin. Code § 7-551(a).  Second, it forbids "any conduct prohibited by… [Cannabis Law § 132(1) or (8)[.]" Admin. Code § 7-551(a).  As relevant here, Cannabis Law § 132(1) makes it unlawful to "offer[] to sell, or sell[], cannabis, cannabis products…or any product marketed or labeled as such, without having an

-15-

***appropriate registration, license or permit therefor***[.]" Cannabis Law § 132(1)(a). (emphasis added). Accordingly, the language authorizing the sealing of a business set forth in § 7-552(b) similarly focuses on the business holding the ***appropriate*** license under the Cannabis Law. More simply stated—if a business sells adult-use cannabis without the appropriate adult-use cannabis license, the Sheriff's Office may take enforcement measures against that business (even if that business has a different Cannabis Law license for a different purpose, such as a hemp license).

Beyond Plaintiffs' improper reading of the plain language of the statute, their interpretation is also plainly wrong when considering the clear purpose and intention of the Admin. Code and the Cannabis Law. A hemp retail license is not the appropriate license to engage in the sale of adult-use cannabis under the Cannabis Law. The Cannabis Law regulates hemp licensees and cannabis licensees differently; indeed, the governing licensing scheme is set forth in two different articles of the Cannabis Law and there are different requirements and rules for each type of license.[11] Plaintiffs acknowledge that these are two separate licenses for two separate purposes, stating: "But the crackdown, even if well intentioned, is having a devastating impact on licensed ***hemp*** retailers, who operate under an entirely different regulatory scheme, and are selling an entirely different product that is not governed by the same regulations as those regarding marijuana [otherwise known as adult-use cannabis]." Am. Compl. ¶ 4.

Put simply, a business needs the ***applicable*** license under the Cannabis Law to sell adult-use cannabis. A hemp license does not permit a business to sell cannabis or products labeled as cannabis. If possession of a hemp license immunized businesses from inspections where illegal sales of adult-use cannabis was suspected by the City, then hemp-licensed shops

---

[11] Cannabis Law Article 4 governs adult-use cannabis licenses and Cannabis Law Article 5 governs hemp licenses.

would have carte blanche to sell unlicensed, potentially dangerous, adult-use cannabis products (and products marketed or labeled as such) without fear of any repercussions.  In other words, the adoption of Plaintiffs' arguments by the Court would open up a giant loophole in the Admin. Code that could allow hemp-licensed shops to sell adult-use cannabis products throughout the City without a license.  This would clearly undermine the regulatory framework which has been set up to protect the public, including children, from illegal sales of unlicensed and potentially unsafe adult-use cannabis products.  This would also hurt those businesses that lawfully obtained adult-use cannabis licenses by potentially setting up a legal black market of hemp-licensed dealers that would effectively be permitted to sell a potentially dangerous product they are not licensed to sell, with impunity.

Based on the foregoing, the adoption by the Court of Plaintiffs' reasoning would clearly undercut the Cannabis Law's purpose, which is to ensure public safety and require different application processes to obtain each specific license.  See e.g., Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute."); Allen Oil Co. v. Comm'r, 614 F.2d 336, 339 (2d Cir. 1980) ("[A] statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless."); People v. Mobil Oil Corp., 48 N.Y.2d 192, 199 (1979) ("It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole and that its various sections must be considered together and with reference to each other.").  Accordingly, the Court should not grant any purported request by Plaintiffs for a declaration that the City may not inspect Plaintiffs' hemp-licensed business (or other hemp-licensed businesses), and dismiss any such claim on this basis as a matter of law.

As a final note, the pleadings do not contain allegations regarding enforcement actions taken by the Sheriff's Office against Plaintiffs in 2024 and thus do not appear to challenge City enforcement procedures under the Admin. Code in any manner, except as discussed above.  Nevertheless, it should be noted that Plaintiffs make a passing reference to an enforcement action taken by the City against Brecken Gold Athletics, NYC, LLC ("Brecken Gold").  Plaintiffs note that Brecken Gold was issued a sealing order by the Sheriff's Office, and that an OATH hearing officer issued a determination recommending that the sealing order be lifted, which the Sheriff's Office declined to follow.  Though the pleadings are vague, Plaintiffs appear to argue that by maintaining the sealing order against Brecken Gold, the Sheriff's Office "violat[ed] their own laws and rules." Am. Compl. ¶¶ 127-129.  While Plaintiffs do not appear to challenge the procedures employed by the City in determining to seal non-party Brecken Gold's establishment,[12] it should be noted that the decision of the Sheriff's Office to decline to adopt the hearing officer's determination did not violate City laws or rules.  As noted in Point II.A, the Admin. Code states that the OATH Hearing Officer issues a recommendation regarding the continuation of a sealing order, but the Sheriff's Office is entitled to make the decision as to whether or not to accept that recommendation.  In the case involving Brecken Gold, the Sheriff's Office declined to follow the OATH hearing officer's determination and kept the sealing order in place, as it was expressly permitted to do by law.

While the Admin. Code section that permits the Sheriff's Office to maintain a sealing order despite an adverse recommendation from an OATH Hearing Officer is not

---

[12] In fact, Brecken Gold is represented in separate state litigation filed against the City, by Plaintiffs' counsel here, in connection with the City's enforcement of the Admin. Code.  That case is currently pending on a transfer to the New York State Appellate Division. See Brecken Gold Athletics NYC LLC v. Office of the City Sheriff, Index No. 157686/2024 (Sup. Ct. N.Y Cnty. Oct. 16, 2024) (J. Frank).

-18-

challenged in this action (nor could it be, as the Sheriff's Office has not sealed any of Plaintiffs' establishments), it bears noting that this procedure, and all of the City's procedures laid out in the Admin. Code are lawful.[13] See e.g., Moon Rocket Inc. v. City of New York, 24-cv-4519 (JPO), 2024 U.S. Dist. LEXIS 127969 (S.D.N.Y. July 18, 2024) (denying preliminary injunction because plaintiffs were not likely to succeed on the merits of their procedural due process challenge to the City's post-deprivation process in the Admin. Code involving the closure of stores selling products marketed as cannabis without a license). To the extent a party which has been the subject of an enforcement action taken by the City (such as Brecken Gold), wishes to challenge a decision of the Sheriff's Office or the rules governing City enforcement, they may do so. But these Plaintiffs simply do not have standing to bring such a challenge here nor have they alleged what the basis for such a challenge might be.

> For the above reasons, Plaintiffs fail to state a claim against the Sheriff's Office.

---

[13] The Amended Complaint challenges the State's enforcement framework on a number of constitutional grounds, including, *inter alia*, based on allegations of improper warrantless searches (Am. Compl. ¶ 209); insufficiency of hearing process (Am. Compl. ¶ 209); failure to train inspectors (Am. Compl. ¶ 216); and alleged insufficiency of seizures based on packaging (Am. Compl. ¶ 224). These claims are not addressed by the City herein, because the City's enforcement procedures (included in the Admin. Code) are not the same as the State's separate enforcement procedures; and Plaintiffs here do not allege that the City's enforcement laws suffer from these same alleged deficiencies. As noted above, Plaintiffs would not have standing to challenge the City's enforcement procedures, as there is no allegation here of any City enforcement action taken or threatened to be taken against Plaintiffs.

## **CONCLUSION**

For any or all of the above reasons, the Court should grant City Defendants'

motion and dismiss the Amended Complaint in its entirety as against the City.

Dated:      New York, NY
             January 3, 2025

                                   MURIEL GOODE-TRUFANT
                                   Corporation Counsel of the
                                   City of New York
                                   Attorney for City Defendants
                                   100 Church Street
                                   New York, NY 10007

                                                 s/

_____

                                   Adam M. Moss
                                   Assistant Corporation Counsel
                                   (212) 356-4017
                                   amoss@law.nyc.gov

                                   Leah A. Reiss
                                   Assistant Corporation Counsel
                                   (212) 356-2116
                                   lreiss@law.nyc.gov

Michelle Goldberg-Cahn, of counsel
Rachel K. Moston, of counsel

CERTIFICATION UNDER LOCAL CIVIL RULE 7.1(c)

According to Word for Microsoft 365, the portions of the Memorandum of Law that must be included in a word count contain 6,084 words, and comply with Local Civil Rule 7.1(c).

Dated:        New York, NY
              January 3, 2024

                                        MURIEL GOODE-TRUFANT
                                        Corporation Counsel of the
                                        City of New York
                                        Attorney for City Defendants
                                        100 Church Street
                                        New York, NY 10007

                                        _____s/_____
                                        Adam M. Moss
                                        Assistant Corporation Counsel
                                        (212) 356-4017
                                        amoss@law.nyc.gov

                                        Leah A. Reiss
                                        Assistant Corporation Counsel
                                        (212) 356-2116
                                        lreiss@law.nyc.gov

Michelle Goldberg-Cahn, of counsel
Rachel K. Moston, of counsel